## LEVINSON v. UNITED STATES.
### No. 5495.

Circuit Court of Appeals, Sixth Circuit.
March 10, 1931.

See, also, 32 F.(2d) 449.

George A. Kelly, of Detroit, Mich., for appellant.

J. R. Watkins, of Detroit, Mich., for the United States.

Before DENISON and MOORMAN, Circuit Judges, and TAYLOR, District Judge.

TAYLOR, District Judge.

This case is here on appeal from a conviction and sentence for violation of section 130, c. 6, of the Criminal Code (18 USCA § 236) which, so far as material, provides: "Whoever shall forge the signature of any * * * officer of any court of the United States * * * for the purpose of authenticating any * * * document" shall be guilty of an offense.

The material part of the indictment charges that the defendant did "unlawfully, falsely and feloniously forge the signature of John A. Baxter to a certain indictment filed in the case of * * * and then pending in the District Court of the United States for the purpose of authenticating" it.

The question most earnestly relied upon at the trial and pressed here is that there is no evidence to support a conviction, because the verb "forge" is used in the indictment in its common-law sense, so as to include fraudulent intent as an essential element of the offense. There is evidence tending to show that the defendant without authority signed the name of Assistant United States Attorney John A. Baxter to an indictment with intent to authenticate the instrument; that is, to give it the semblance of sanction of the United States attorney—to make it appear genuine. There is evidence tending to show that the practice in the District Court where the alleged forged indictment was pending, was that the grand jury would hear the evidence presented and keep minutes from which the district attorney would later cause to be prepared indictments, including the names of the defendants and the offenses with which each defendant was to be charged, and that the particular indictment signed by this defendant—the basis of this charge—was not in accord with the minutes of the grand jury, in that it omitted the names of two defendants and charged the one defendant indicted with a lesser offense than the grand jury had by the minutes directed that he be charged.

In the course of the trial the United States attorney conducting the case questioned certain witnesses touching payments believed to have been made by them to or for the defendant for the purpose of inducing him to do the thing that resulted from the unauthorized authentication. No such payments to the defendant were shown, and, in so far as the testimony upon this subject tended to involve others, it was objected to, and, when admitted upon the district attorney's avowal that it would be later made relevant, proper exception was noted. When it appeared that the testimony was not made relevant, it was properly withdrawn from the jury.

By proper exception there is presented for consideration here the question whether unauthorized authentication or intended authentication, in the absence of any fraudulent intent, constitutes an offense under the statute.

The court instructed the jury, in effect, that the burden did not rest upon the government to prove that the defendant intended to defraud, but that intent to sign the name of

the officer of the court set out in the indictment without authority, intending thereby to authenticate the document therein set out, constituted the crime.

It may be assumed that Congress has the power to make it an offense to knowingly affix the signature of another who is an officer of a court to a document for the purpose of authenticating it. The question presented here is whether the verb "forge" used in the statute must be given its generally accepted common-law meaning; that is, Must the statute be understood to mean the affixation of the name of an officer of the court for the purpose of authenticating a document without authority and with fraudulent intent?

■ In the case of In re Greene (C. C.) 52 F. 104, 111, Circuit Judge Jackson said: "When Congress, under and in the exercise of powers conferred by the constitution, adopts or creates common-law offenses, the courts may properly look to that body of jurisprudence for the true meaning and definition of such crimes, if they are not clearly defined in the act creating them," citing U. S. v. Armstrong, Fed. Cas. No. 14,467, 2 Curt. 446; U. S. v. Coppersmith (C. C.) 4 F. 198.

In the Coppersmith Case, supra, the meaning of the word "felony" used in a statute became important. Upon the sense in which it was used depended the number of challenges the defendant was entitled to in the case under consideration. At page 205 of 4 F., the court used this language (Hammond, District Judge: " * * * And in those cases where congress has been content to denounce the offence by its common-law name, as in murder and rape, for example, * * * they stand as if congress had re-enacted the common law totidem verbis." In U. S. v. Cardish (D. C. Wis.) 143 F. 640, 642, it is said: "The rule seems to be well settled that when Congress by statute refers to or adopts a common-law offense, without further definition, the common-law definition must obtain."

In the case of U. S. v. Carll, 105 U. S. 611, 613, 26 L. Ed. 1135, the Supreme Court said: "The language of the statute on which this indictment is founded includes the case of every person who, with intent to defraud, utters any forged obligation of the United States. But the offence at which it is aimed is similar to the common-law offence of uttering a forged or counterfeit bill. In this case, as in that, knowledge that the instrument is forged and counterfeited is essential to make out the crime; and an uttering, with intent

to defraud, of an instrument in fact counterfeit, but supposed by the defendant to be genuine, though within the words of the statute, would not be within its meaning and object."

■■ The word "forged" in the statute under which this conviction was had must be given some meaning. The common-law crime of forgery contains as an essential ingredient fraudulent intent. This is well settled. We conclude that Congress must have used it intending thereby to couple with the intent to authenticate the intent to defraud.

An examination of the entire section under which the indictment is drawn [1] discloses that it penalizes the tendering in evidence of any such document with a false or counterfeit signature of such officer knowing such signature to be false or counterfeit. While this language may be broad enough to indicate an intent on the part of Congress to prohibit the use, without intent to defraud, of such known false or counterfeit signature and give some color to the insistence that the word "forge" in the earlier portion of the statute should be construed to mean "unauthorized," that construction would require reading into the earlier portion of the statute the phrase "knowing the lack of authority," and, if this construction should be found permissible under the settled rules, an indictment thereunder would necessarily contain the allegation that the defendant knowingly forged, that is, affixed the signature without authority, knowing he had no authority to so affix the same. We are of the opinion that Congress, regardless of its intent, by the use of the verb "forge," limited the application of the statute, in so far as cases of intended authentication are concerned, to those in which the elements of common-law forgery enter.

The government proved facts from which the jury might have inferred the fraudulent intent necessary under the statute to constitute the offense; but the jury might very well have believed that there was no such in-

[1] "Whoever shall forge the signature of any judge, register, or other officer of any court of the United States, or of any Territory thereof, or shall forge or counterfeit the seal of any such court, or shall knowingly concur in using any such forged or counterfeit signature or seal, for the purpose of authenticating any proceeding or document, or shall tender in evidence any such proceeding or document with a false or counterfeit signature of any such judge, register, or other officer, or a false or counterfeit seal of the court, subscribed or attached thereto, knowing such signature or seal to be false or counterfeit, shall be fined not more than $5,000 and imprisoned not more than five years." Rev. St. § 5419, March 4, 1909, c. 321, § 130, 35 Stat. 1112, USCA § 236, title 18.

tent and yet under the charge felt compelled to convict.

Because of the charge authorizing a conviction without the finding of fraudulent intent, the judgment is reversed, and the cause remanded for a new trial.